------o------

## No. 5961.

## J. J. NEWMAN LUMBER CO. vs. TEXAS TRANSPORT & TERMINAL CO., AND THE GOMILA-DEMACK COMPANY.

### Syllabus.

A transport company is liable to the shipper for the value of lumber deposited on its wharf for shipment, and loaded by it, and transported to a foreign country, when prior to the loading of it aboard ship, the shipper has instructed the company not to ship the lumber or to hold it.

Appeal from the Civil District Court for the Parish of Orleans, Division "A," No. 83,746. Hon. T. C. W. Ellis, Judge.

J. Zach. Spearing, for plaintiff and appellant.

Rice & Montgomery, Farrar, Jonas & Kruttschnitt, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

Plaintiffs sue the Transport Company for having taken possession and disposed of, without their permission, two cars of lumber. The facts are as follows:

In March, 1907, the plaintiffs, who are dealers in lumber and reside in Hattiesburg, Mississippi, sold to the Gomila-Demack Company, of New Orleans, two carloads of lumber for the price of $727.17. On April 27th, 1907, the Gomila-Demack Company instructed the railroad company to deliver this lumber to the Steamship "Logician" which was controlled by the Texas Transport & Terminal Company, with which Transport Company they had made arrangements for freight room on the "Logician" to carry the lumber to Hamburg. The railroad company accordingly, on April 29th, 1907, discharged the lumber upon the wharf space assigned to the "Logician." Before the lumber was loaded on board the "Logician," Gomila-Demack found fault with the quality of the lumber, and instructed the defendant company, through its resident agent, not to ship it. The lumber was accordingly not moved, but allowed to remain on the wharf, and the "Logician" took her departure. On May 2nd, Gomila-Demack notified the plaintiffs, Newman Company, that they could not accept the lum-

— 8 —

ber, that it was unloaded on the wharf, and requested them to send some one to take charge of it as it was useless to them for exportation. On May 6th, the plaintiff company acknowledged receipt of the notice, promised to have some one to see to the lumber, and asked Gomila-Demack to advise them as to what they could do with the stock and what allowance would be right under the circumstances. Gomila-Demack answered, May 8th, that they could give no advice as to the disposition to be made of the lumber nor its value, as they did no interior business in saps, and asked for a check to cover the shipment. On May 16th, Gomila-Demack again wrote to the plaintiff that the lumber was "still on the docks with charges accumulating awaiting instructions" from them. On May 23rd, Gomila-Demack again wrote to the plaintiff concerning the lumber, and drew on them for the price paid by them with expenses added. On May 25th, the plaintiff remitted to Gomila-Demack their check for $790.17. The lumber still remained upon the wharf. In the meanwhile another ship, the "Senator," arrived, and was loading from the wharf for Hamburg, and the Transport Company loaded the lumber upon that ship which sailed on May 30th. No further instructions had been asked or received by the Transport Company concerning this lumber since the last orders not to ship. The plaintiffs now claim the value of the lumber.

The Gomila-Demack Lumber Company admitted the purchase of the two cars of lumber and the cancellation of the sale, but denied that said cars were in its possession or under its control after their letters rejecting the lumber, and averred, that, on the contrary, it was on the wharf subject to the orders of plaintiffs and at their peril.

— 9 —

The Transport Company admitted the contract for freight room, admitted that the lumber was delivered to it upon its wharf, admitted the order to hold the two cars out, but averred that the Demack Company meant by that order, and they understood, that the lumber was not to be shipped by the "Logician" but was to go on the next ship sailing, and failing to receive any instructions to the contrary, they shipped the lumber upon the "Senator" which was the first ship sailing for Hamburg after the departure of the "Logician;" that in so doing they performed their duty under the custom of the port and under their contract; that it is the custom of the shipper to remove goods which are placed upon the wharf when said goods are not to be exported; that said lumber was transported to Hamburg where it was sold by the Transport Company for the net price of $291.54, which they deposited in 'Court for account of the party entitled to the amount.

There was judgment against the Transport Company for $291.54, and in favor of the Gomila-Demack Company. We think the judgment in favor of the Gomila-Demack Company correct beyond a doubt. The plaintiffs had acquiesced in their refusal to accept the lumber, they had resumed ownership and control of it, and returned the price, several days before the lumber was removed from the wharf. Gomila-Demack were under no duty to watch the lumber, they were not instrumental in having it removed, and cannot therefore be held liable for its removal.

The clause in the bill of lading "or failing shipment by said steamer, in and upon a following steamer," is merely intended to mean that if, for any sufficient reason, the goods cannot be shipped by the particular steamer named in the bill, that a shipment by the "following steamer"

shall be held to be a compliance by the Transport Company with their obligations; it does not make it their duty, nor does it give them the right to ship, notwithstanding orders to the contrary.

We may admit the custom to remove goods which are not to be exported; and yet it does not follow that the failure to observe this custom shall justify the Transport Company to take the goods on board its ships and to transport them to Europe and there sell them for account of the owners, in the face of instructions not to ship.

The whole case turns upon the interpretation to be given to the instructions of Gomila-Demack Company not to ship the lumber. Were their instructions not to ship on the ''Logician'' or not to ship at all?

There is no doubt that by the light of their reason for withholding the shipment given in the letters to the plaintiff, Gomila-Demack Company meant, as far as they were concerned, to arrest the shipment altogether, and not only temporarily, because they could not use the lumber in their line of business, and it was worthless to them. It is therefore to be presumed that they so instructed the Transport Company.

Wm. S. Rogers, Secretary-Treasurer of the Gomila-Demack Company, testifies:

> ''I notified Mr. Roach, if I remember correctly, on the wharf. I told Mr. Roach that they could not go forward, or words to that effect.''
>
> ''Was he there with you?''
>
> ''Yes, sir.
>
> ''After that what did you do?
>
> ''Went right to the office and telephoned Mr. Carriere. I told him that those two cars were not to go forward; I don't recollect whether I explained

— 11 —

that they were not in condition or not. * * * I told them not to ship; I did not stipulate the Logician. * * * I simply notified them these two cars must not go forward—cannot go forward, I think I said."

R. J. Carriere, Export Clerk of the Transport Company, testifies:

"Mr. Rogers phoned me and asked that two cars be held out of the Logician, which was done. * * * Well, the exact words I don't remember * * * he may have said something else."

While it is clear that under the contract of affreightment, the Transport Company could have left that lumber on the wharf in case of want of space on the Logician, and then could or should have loaded it on the next steamer, Senator, we do not think that the company would have had a right to load the lumber on the Senator if it had been instructed not to ship the lumber. We think the instructions given by Mr. Rogers were sufficiently clear, and were so understood, that the lumber was not to be shipped under any circumstances on board the Logician. We also believe that they were sufficiently explicit to inform the Transport Company that no further action was to be taken concerning that lumber until further instructions from the shippers. If the lumber had been left over from the Logician, and the Transport Company had loaded it on the next steamer, in the absence of contrary instructions from the shippers, it would have been in accordance with custom and with their contract; but we do not think that such a course would have been justified when the reason for withholding the lumber resulted from instructions "not to ship," or "not to go forward," or "to hold out."

We think that the Transport Company should have taken some steps to arrest the moving of that lumber which was lying on that wharf, not under the usual conditions of want of space, but owing to orders not to ship, and that it was owing to that neglect that the Senator took the lumber aboard, in the usual course of freight left over; that it was an oversight or a neglect on the part of the Transport Company. If instead of loading the lumber on the Senator, it had left it on the wharf, and any damage had happened to it, the Transport Company would have been protected by the order of Gomila-Demack. Having appropriated the lumber, it must indemnify the plaintiff. The loss the plaintiff has suffered is the value of the lumber at the moment of its appropriation. The only testimony upon that subject is that of Wm. S. Rogers and Gomila. It is not very positive, but taken in connection with other evidence, we think it sufficient to establish the value at $12.00 a thousand. Upon the two cars there was 33,822 feet of lumber, worth at that valuation $405.86.

It is therefore ordered, adjudged and decreed that the judgment of the lower Court as regards the Gomila-Demack Company, be affirmed, and, as regards the Transport Company, amended, and that there now be judgment in favor of the plaintiff, the J. J. Newman Lumber Company and against the Texas Transport & Terminal Company for Four Hundred and five 86-100 dollars with five per cent per annum interest from May 30th, 1907, until paid, with all costs of both Courts, except those incurred by the Gomila-Demack Company; and that said plaintiff company be recognized as the owner of, and entitled to receive in capital and interest, the deposit of $291.54 made by said Transport Company in the registry of the 'Court in part payment of this judgment.

It is further ordered that the Gomila-Demack Company recover of the plaintiff company all its costs.

Opinion and decree, February 1st, 1915.

St. Paul, J., not having heard the whole argument of the case, takes no part in this opinion.